THE STATE ex rel. WABASH RAILWAY COMPANY and EDGAR H. RAGSDALE v. EWING C. BLAND et al., Judges of Kansas City Court of Appeals.

Division One, March 12, 1926.

1. **NEGLIGENCE: Railroad Crossing: Sounding Whistle: Humanitarian Doctrine: Conjecture: Nice Calculations.** The deceased, driving an automobile, was killed by a train at a country railroad crossing. She was oblivious of her danger, no warning signals were given by the trainmen, the train was running fifteen to twenty-five miles per hour, the automobile ten miles per hour, the fireman saw her when she was forty or fifty feet and the train one hundred feet from the crossing, and the automobile could have been stopped within four or five feet. The speed of the train was therefore twice that of the automobile, and at the rate of speed they were traveling both would have reached the crossing within less than three and a half seconds after her peril was discovered. The Court of Appeals held, in effect, that the fireman in the three and a half

State ex rel. Railroad v. Bland.

seconds could have communicated with the engineer, and was negligent in not telling him to sound the whistle, and if that had been done the engineer could thereafter have sounded the whistle, "although there is no testimony showing the time required for the engineer to do the things necessary to sound the warning whistle" in time for the deceased to have received it and thereafter stopped her automobile before it reached the crossing, and consequently the jury were warranted in finding that the enginemen, if they had exercised ordinary care, could have avoided the injury. *Held*, that a conclusion based upon such refinements and such nicety of calculations is bound to be more or less conjectural, because of the many unknown factors involved in every such situation, and a verdict reached in that manner offends against the rule that verdicts must be based upon substantial evidence, and not upon conjecture or speculation, and the decision of the Court of Appeals contravenes the rulings of this court in Rollison v. Railroad, 252 Mo. 525, and other cases.

2. ——: Instruction: Damages Instead of Penalty. An instruction telling the jury that "if you find the issues for the plaintiff you will assess his damages at not less than two thousand and not more than ten thousand dollars; in determining the amount you will award the plaintiff you will take into consideration the facts constituting the negligence, if any, on the part of the defendant fireman and the railway company, causing the death of plaintiff's wife, including the aggravating circumstances, if any, attending such negligence, if any, as shown by the evidence," is technically erroneous, but is not prejudicial, that is, reversible error. It is technically erroneous because it uses the word "damages" instead of the word "penalty," and where the word "damages" is used in an instruction in an action based on this statute its use invites the closest scrutiny and a possible reversal.

Appeal and Error, 4 C. J., Section 3014, p. 1032, n. 36; Section 3202, p. 1173, n. 70. Certiorari, 11 C. J., Section 37, p. 106, n. 71. Courts, 15 C. J., Section 518, p. 1092, n. 63.

## *Certiorari.*

Opinion and judgment quashed.

*Homer Hall, J. E. Black* and *S. J. & G. C. Jones* for relators.

(1)  Under no phase of the case, under no word or syllable of testimony, was the plaintiff entitled to go to

the jury on the humanity rule, because the evidence of-firmatively shows that the train could not have been stopped, or the speed slackened in time to have averted the collision, nor was any attempt whatever made to prove that a warning signal could have been sounded in time to have notified Mrs. Loyd of the train's approach. Keele v. Railroad, 258 Mo. 78; Walquist v. Ry. Co., 292 Mo. 43; State ex rel. v. Ellison, 270 Mo. 105; Kuhlman v. W. L. & T. Co., 271 S. W. 789; Christian v. Ins. Co., 143 Mo. 469. Submitting the question of failure to warn, there being no evidence on that score was certainly enlarging the scope of the evidence, and also submitting an issue not based on any evidence in the case. (2) The holding of the Court of Appeals approving Instruction 3, violates the holding of this court in Treadway v. United Railways, 300 Mo. 156, and Grier v. Ry., 286 Mo. 523. The first paragraph of the instruction submits to the jury the question of a recovery of damages, not penalty. Not only that, but by the use of the word "damages" in the first paragraph of the instruction it allowed a recovery for a pecuniary loss, which was not permissible, as this court decided in the Treadway case. The fact is that if there was reversible error, and that there was admits of no doubt since the decision of this court in the Treadway case, then it constituted reversible error to give Instruction 3.

*George W. Crowley, John C. Jacobs, Lavelock, Kirk-patrick, Clark & Garner* for respondents.

(1) The facts of this case differ materially from those in each of the decisions cited by relators. In the case at bar, the fireman saw and knew Mrs. Loyd was oblivious to danger. No statutory or warning signals were given, although the fireman saw Mrs. Loyd forty feet away, and knew she was oblivious to her peril. If the warning signal had been given, she could have stopped within three to five feet. The case at bar, on the facts,

is strikingly like the case of Zumwalt v. Ry., 266 S. W. 717, in which the Supreme Court held that the evidence made a case for the jury under the humanity rule. (2) The defendants (relators) having submitted to the jury the humanity rule by their requested instructions, after the overruling of their general demurrer to the evidence, are not now in a position to contend that the evidence did not justify the submission of this issue. State ex rel. v. Allen, 272 S. W. 925. (3) The holding that plaintiff's Instruction 3 was proper, is not in conflict with Treadway v. Ry., 300 Mo. 156, or Grier v. Ry., 286 Mo. 523. The Grier case is express authority in support of plaintiff's Instruction 3. The instruction condemned in the Treadway case was vastly different from Instruction 3, and for the reasons pointed out in McDaniel v. Davis, 266 S. W. 710, there is no conflict between the opinion of the Court of Appeals and the Treadway case. The McDaniel case expressly approves an instruction identical with Instruction 3, and completely answers relators' contentions upon this branch of the case.

RAGLAND, P. J.—*Certiorari.* Relators seek in this proceeding to quash, on the ground of conflict of decision, the opinion and judgment of the Kansas City Court of Appeals in the case of Henry J. Loyd, respondent, v. Wabash Railway Company et al., appellants, lately pending before it on appeal from the Circuit Court of Clay County. We go to the opinion for the facts:·

"This is an action to recover damages for the death of plaintiff's wife which resulted from a collision between one of defendant's freight trains and an automobile driven by the deceased. Defendant Wabash Railway Company is a corporation engaged in the operation of a railroad within and through the counties of Clay and Ray in the State of Missouri and elsewhere. The other defendants are Leslie E. Brooks, who was the conductor; Avery E. Guitar, the engineer, and Edgar H. Ragsdale, the fireman in charge of the train of defendant

railway company at the time of the death of plaintiff's wife, as alleged in the petition.

"The accident which is the basis of this suit occurred at about 2:30 P. M. on July 26, 1923, at a point about one-half mile east of the station of the defendant railway company known and designated as Excelsior Springs Junction, in Clay County, Missouri. The record discloses there is a public highway running east from said station on the south side of, and adjacent to, the right-of-way fence of said railway company, to a point about one-half mile east of said station, where said public highway, instead of continuing its eastern directon, turns north a distance of about forty to fifty feet south of the railroad track and continues north across said tracks at a point familiarly known in the vicinity as Connelly's Crossing.

"On the day in question plaintiff's wife, in an automobile, drove east from Excelsior Springs Junction along the said public highway and following the fixed direction thereof, turned north in an attempt to cross the railroad tracks at Connellys' Crossing. At about the same time a local freight train of defendant railway company, composed of an engine, a caboose and eight or ten freight cars, was approaching from the east. The automobile was being driven at a speed of about ten miles an hour and the train was running at a speed variously estimated at fifteen to thirty miles per hour. The automobile and train met at said crossing, and the former was struck about the middle of its right side and demolished; and plaintiff's wife, who was the driver and only occupant of the car, was so badly injured that she died immediately.

"The evidence shows the public highway in question runs east and west, parallel with the south line of the Wabash Railway Company's right-of-way from Excelsior Springs Junction to the Connelly Crossing. When this highway reaches a point about forty or fifty feet south of the crossing, it runs north and crosses the railway tracks practically at right angles. The track at a dis-

tance of approximately one-half mile east of said crossing curves slightly to the left; from that point west to said crossing there is a slight up-grade, and the public highway from the point where it turns northward at the south line of the right-of-way is up-grade, the railroad track being on a fill from two to four feet high. The evidence further shows that a person driving on the public highway, after turning north at the south line of the right-of-way, may see a train approaching from the east for a distance of one hundred to five hundred feet, and that this line of vision increases as the railroad track is neared, until at or near the track a train so approaching may be seen for a distance of half a mile. There is nothing to obscure the view to the east practically from the time one makes the turn at the south line of the right-of-way, except some trees located on the south side of the right-of-way fence and immediately inside the property line of one Stephen Yates.

"Plaintiff attempted to show that the trees standing in the yard of Mr. Yates would have an obscuring effect on the view of one approaching from the west toward the turn in the highway and looking east along the railroad track, the proof showing varying distances of unobscured vision ranging from one hundred yards to a quarter of a mile. The testimony also shows the railroad company maintained two whistling posts near each other east of the Connelly Crossing, one for the crossing and the other for the station at Excelsior Springs Junction.

"Mr. Yates, one of the two eye-witnesses to the accident, testified he was standing inside his yard, about seventy feet south of the crossing and east of the highway; that Mrs. Loyd passed within ten or fifteen feet of him as she turned north and that she seemed to be looking straight ahead to the north; that he saw the train approaching and called to her to 'look out,' but could not tell whether or not she heard him; at least she paid no attention to his warning; that after she turned north it was only a second or so until she was struck by the train.

He also testified that the train was at a point about one hundred feet east of the crossing when Mrs. Loyd made the turn.

"The testimony shows that the engineer of the train was in his rightful place on the north side of his engine cab, and by reason of the construction of the engine, together with the curve in the track, he was unable to see a vehicle approaching the crossing from the north.

"Plaintiff placed upon the witness stand defendant Edgar H Ragsdale, the fireman, the other eye-witness to the accident. He testified that he saw Mrs. Loyd approaching the crossing after she had made the turn, and that at that time she was probably forty feet south of the track, apparently looking northwest or west; that he immediately notified the engineer and called on him to stop the train; that the engineer at once applied the emergency brakes, but that the train ran something like four hundred feet before it came to a full stop; that when he discovered Mrs. Loyd approaching the track, the engine was about one hundred feet east of the crossing.

"The testimony further shows that for a number of years prior to her death Mrs. Loyd had lived near the crossing, was familiar with it, and had often driven an automobile over it. Witness Ragsdale's testimony is to the effect that the engine bell was ringing for the full distance of eighty rods east to the crossing and that the whistle had been sounded at the whistling posts east of the crossing. However, there was testimony on behalf of plaintiff by various witnesses to the effect that they lived within the near vicinity of the scene of the accident; that they observed the train approaching and that they heard no whistle sounded nor bell rung at any time.

. . .

"There was testimony that the automobile could have been brought to a stop in three to five feet, running at a speed of ten miles per hour. There is no testimony of record showing the time required for the engineer to do the things necessary to sound the warning whistle.

. . .

"The following facts clearly are deducible from the evidence:   (1)   That Mrs. Loyd was oblivious of her danger; (2) that no warning signals were given by the trainmen; (3) that the train was running fifteen to twenty-five miles per hour; (4) that the automobile was going ten miles per hour; (5) that defendant Ragsdale had an unobstructed view of the crossing for a distance of eighty rods east thereof; (6) that Ragsdale saw Mrs. Loyd when she was forty to fifty feet away from the track and the train one hundred feet from the crossing; (7) that defendant knew Mrs. Loyd was in a position of peril and oblivious thereto; (8) that the train could have been stopped within 275 to 300 feet and the automobile within four to five feet."

I.   The facts so stated and summarized, the court ruled, made a case for the jury under the humantarian doctrine.   It is apparent at once that in applying the humantarian rule to the evidence as a whole some of the facts set forth in the summary are wholly

**Failure to Warn: Nicety of Calculation: Conjecture.** irrelevant.   It is perfectly obvious that the train could not have been stopped in time to have prevented the collision, and there is no suggestion that its speed could have been sufficiently slackened to have permitted the automobile to safely cross ahead of it.   It is likewise patent that even though the fireman had an unobstructed view of the crossing, and saw it, when the train was still eighty rods east of it, there was nothing in the situation at that time that called for any action on his part or that of the engineer's.   They were not required to act, except to continue to keep a lookout, unless and until the situation so developed as to put the driver of the automobile in a position of imminent peril.   Until the time she turned north and continued moving toward the crossing with her face averted from the direction from which the train was approaching, the fireman had the right to assume that she would stop in a place of safety and await the

passing of the train. Until that time she was not in peril, at least not in a discoverable position of peril. When she turned north, however, and continued driving in apparent obliviousness of the on-coming train, her peril became obvious. She was then approximately fifty feet from the track and moving toward it at the rate of ten miles an hour. The train was one hundred feet away approaching at the rate of twenty miles an hour. At those rates of speed both would reach the crossing within less than three and one-half seconds. The rate of the automobile was definitely fixed at ten miles per hour, while that of the train was estimated to have been from fifteen to twenty-five miles an hour. But it is evident that the train was moving twice as fast as the automobile because it covered twice the distance in the same length of time.

The Court of Appeals held in effect that the fireman was negligent in telling the engineer to stop the train instead of telling him to sound the whistle; that within 3 9/22 seconds (which is approximated as four seconds) the fireman could have communicated with the engineer and thereafter the engineer could have sounded an alarm with the whistle, although "there is no testimony in the record showing the time required for the engineer to do the things necessary to sound the warning whistle," in time for the driver of the automobile to have received it and thereafter stopped her car before it reached the zone of danger; and that consequently the jury was warranted in finding that the servants of defendant railway company, if they had exercised ordinary care, could have avoided the collision and the resulting death. A conclusion based upon such refinements and such nicety of calculation is bound to be more or less conjectural, because of the many unknown factors involved in every such situation. A verdict reached in that manner offends against the rule that verdicts must be based upon substantial evidence and not upon conjecture and speculation, as we have held in many cases, including Rollison v. Railroad, 252 Mo. 525; Sullivan v. Railroad, 271 S. W.

983, and Burge v. Railroad, 244 Mo. 76. The decision of the Court of Appeals contravenes our rulings in the cases just referred to.

II. The Court of Appeals approved the following instruction given by the trial court:

*Instruction.* "The court instructs the jury that if you find the issues for the plaintiff, you will assess his damages at not less than $2,000 nor more than $10,000.

"In determining the amount you will award the plaintiff you may take into consideration the facts constituting the negligence, if any, on the part of the defendant, Edgar H. Ragsdale and Wabash Railway Company, causing the death of the said Delia Loyd, including the aggravating circumstances, if any, attending such negligence, if any, as shown by the evidence."

It is strenuously insisted by relators that under the decisions in Treadway v. United Railways, 300 Mo. 156, and Grier v. Railroad, 286 Mo. 523, the instruction was erroneous. In this they are right, it was *technically* erroneous. But in McDaniel v. Davis, 266 S. W. 710, it was held that the giving of such an instruction, the facts of the case and the wording of the particular instruction considered, did not constitute reversible, that is prejudicial, error. The same situation possibly exists with reference to the case under review. But it is remarkably strange that the word "damages" instead of "penalty" continues to be used in such instructions, in the face of the statute and repeated rulings of this court. The persistence in that practice illustrates anew the laggard conservatism of the bench and bar. When once they have gotten into a particular rut and followed it for any considerable length of time, nothing short of an upheaval of cataclysmic proportions can get them out of it. Notwithstanding, we take this occasion to point out that the use of the word "damages" in an instruction upon the

measure of recovery under the statute in every instance invites the closest scrutiny and a possible reversal.

Because of the conflict of decision pointed out in the preceding paragraph the opinion and judgment of the Kansas City Court of Appeals are quashed. All concur.