THE STATE EX REL. CITY OF ST. CHARLES v. GEORGE F. HAID ET AL., Judges of St. Louis Court of Appeals.—28 S. W. (2d) 97.

Court en Banc, May 15, 1930.

*Wm. F. Achelpohl, T. C. Bruere* and *Hensley, Allen & Marsalek* for relator.

*B. H. Dyer, Wm. F. Bloebaum, Alvin H. Juergensmeyer* and *Hostetter & Haley* for respondents.

COOLEY, C.—This is an original proceeding by certiorari in which relator seeks to have quashed the record of the St. Louis Court of Appeals affirming the judgment for $3500 in favor of plaintiff in a cause wherein Burnice Cregger was plaintiff and the City of St. Charles, relator herein, was defendant.

Plaintiff's action was for damages for the death of her husband, which resulted from his falling from a moving truck at about the intersection of Kingshighway and Sibley Street in defendant city, it being claimed that deceased's fall was due to the negligence of the city in permitting a hole dangerous to travelers to be and remain in the surface of Kingshighway. Respondents in their opinion, Cregger v. City of St. Charles, 11 S. W. (2d) 750, thus state the facts:

"While the directions we shall give are not entirely accurate, it tends to an easy understanding of the situation, and does no violence to the rights of either party, to say that Kingshighway runs from north to south, and that Sibley Street, extending from west to east, intersects, but does not cross, Kingshighway on the west. At the time of the casualty, Kingshighway was constructed with a rock foundation covered with macadam, and was one of the principally traveled streets of the city. At the intersection of the two streets there was a brick walk, extending across, and within, Sibley Street, parallel to the west line of Kingshighway.

"A break in the surface of the macadam, following a washout, had caused a hole to form in Kingshighway, the location of which was variously estimated at from six to ten feet east of the west curb of Kingshighway, and from eight to eighteen feet north of the north line of Sibley Street. The hole, which was about two feet in length, and the same distance in width, was not abrupt, but sloped down to the center, where its greatest depth of five or six inches was to be found. It was shown that the hole had existed in the surface of the street for as much as two months prior to the day in question, and was not repaired by the city until within one or two hours after the body of decedent was removed.

"Shortly before seven o'clock, on the morning of December 12, 1925, one Robert M. Summers was driving southwardly on Kingshighway toward Sibley Street in his Ford truck, accompanied by two other men, one of whom was sitting with Summers in the seat, while the other sat in the door of the cab, with his feet resting upon the running board. The truck was constructed in the ordinary manner, having a cab in the front, extending three feet, or slightly more, above the floor of the bed, which was five feet in width, and eight feet in length, with sides seventeen inches in height. The rear spring and the tires of the truck were described as solid. Approximately two blocks north of Sibley Street, Summers observed decedent, with whom he had been acquainted for seven or eight months, walking southwardly on the sidewalk on the west side of Kingshigh-

way, carrying his dinner pail in his hand; and he invited the latter to ride to work in the truck, as he had also had occasion to do on the previous morning. Decedent, who was about six feet in height, climbed into the bed of the truck, and stood with his left hand on the top of the cab, meanwhile holding his dinner bucket in his right hand, after which he was never again seen alive.

"As Summers approached Sibley Street, he veered his course slightly to the left towards the center of Kingshighway, to make a right-hand turn, and, just as he did so, his right rear wheel dropped into, and passed through, the hole at a point three or four inches from its edge, producing 'quite a little jar,' as well as a 'considerable jerk,' when the wheel left the hole. He made the turn at a speed of twelve or fifteen miles an hour, and continued onward to his destination, when it was found that decedent was missing. Summers and his companions thereupon retraced their course in search of decedent; and, when they arrived at the intersection of Kingshighway and Sibley Street, they saw his body lying in the street, having meanwhile been discovered by one East, a delivery boy, at approximately ten minutes of seven o'clock.

"The body was resting on the stomach and lay diagonally in the street, with the head to the north and facing west and the feet towards the south. The head was at or near the brick cross-walk, at a point twenty-one feet from the north curb of Sibley Street, while the feet were two feet north of the south line of Sibley Street and extended out into Kingshighway for a distance of two and one-half feet. Upon an examination it was found that the upper and back portion of the head was bruised, with the skull fractured in two places, and that the right ear was almost entirely severed. There were also marks present on the surface of the street which indicated that the body had slid for a distance of sixteen inches from a point east of where it was lying and nearer to the center of Kingshighway.

"There was further evidence that the position of the body was to the left, and south, of the point where Summers had made the right-hand turn, and that the head was thirty-eight feet from the hole in the surface of Kingshighway, if the platted measurements are to be taken as accurate.

"It is also pertinent to add that the facts heretofore detailed come wholly from plaintiff's side of the case, defendant having contented itself with offering no evidence save for a plat of the scene of the accident, which it had had prepared.

"The only point urged by defendant on this appeal is that its peremptory instruction in the nature of a demurrer to the evidence, requested at the close of the whole case, should have been given."

Relator contends that respondents' opinion is in conflict with controlling decisions of this court in several respects, which alleged points of conflict will be noted in the order in which they are urged.

I. Relator first contends that respondents' opinion conflicts with the following decisions of this court holding that in order to recover plaintiff must adduce substantial evidence of a causal connection between the negligence charged and the injury, showing the negligence to be the proximate cause of the death of plaintiff's husband, viz: State ex rel. Public Utilities Co. v. Cox, 298 Mo. 427, 250 S. W. 551; Hamilton v. Ry. Co., 300 S. W. 787; State ex rel. Boeving v. Cox, 310 Mo. 367, 276 S. W. 869; State ex rel. Railroad v. Bland, 313 Mo. 246, 281 S. W. 690; State ex rel. City of Macon v. Trimble, 12 S. W. (2d) 727; Pointer v. Mountain Ry. Constr. Co., 269 Mo. 104, 189 S. W. 805; Van Bibber v. Swift & Co., 286 Mo. 317, 228 S. W. 69; Kane v. Mo. Pac. Ry. Co., 251 Mo. 13, 157 S. W. 644; Swearingen v. Railroad Co., 221 Mo. 644, 120 S. W. 773; Harper v. Terminal Co., 187 Mo. 575, 86 S. W. 99; Layton v. Chinberg, 282 S. W. 434; Strother v. C. B. & Q. Railroad Co., 188 S. W. 1102; Yarnell v. Railroad, 113 Mo. 570, 31 S. W. 1.

In State ex rel. Public Utilities Co. v. Cox, supra, deceased was found under a highly charged electrical wire of defendant. His body showed signs of an electric burn, but there was no evidence as to how he received it. There was a guy wire, some nine feet from which deceased's body was found, so situated that it could have been pushed or blown by the wind into contact with defendant's charged wire, but no evidence tending to show that any such thing had happened. The charged wire was five and a half to six feet higher than deceased's head if he had been standing. A detached piece of wire three or four feet long was found on the ground near defendant's hand. This court said:

"The opinion of the Court of Appeals states that: 'The only explanation as to how he came in contact with it (the electricity) that can be thought of is that it escaped down this guy wire, or that plaintiff's husband purposely and voluntarily and negligently, if you please, reached through the picket fence pen, and touched the high-powered wire with the wire which was found near his hand after his death.'"

There being no evidence tending to show that the guy wire had come into contact with the charged wire, or that the guy wire was at the time charged with electricity, or that deceased had touched the guy wire, Davis, C., speaking for this court said:

"We have no circumstantial fact in evidence, from which to draw the conclusion, that the guy wire, at the time of the demise, was charged with electricity. To hold defendant guilty of negligence we must also presume that deceased was in the exercise of due care, that he touched the guy wire and that the guy wire was pushed or blown to contact with the two high-tensioned wires. While these presumptions are vital to plaintiff's recovery, still they may not be used to

hold defendant responsible, for they are merely presumptions builded together. There is no evidence in the record, positive or circumstantial, that the things, just above mentioned, happened.''

In Hamilton v. Railway Company, supra, the administrator of one Fanger sued to recover for Fanger's death, claiming that he had been knocked from the running-board of defendant's engine by coming in contact with the spout of a water tank, which water spout it was alleged had been negligently permitted to hang too low, so that it might strike a person on the running-board of a passing engine. There was some evidence, though very slight, that at the time in question the spout may have been low enough to strike deceased. But plaintiff's evidence also showed that when said spout had been observed thus hanging low it also ''swung to the west,'' and it was not shown how far to the west it swung. The court said: ''If it 'swung to the west' far enough, it was not in the path of passing trains.'' Moreover, to sustain plaintiff's recovery it would have been necessary to presume, or infer, not only that the spout was in position, to strike and did strike Fanger, but that the blow, as plaintiff's counsel argued, merely dazed or injured him, and that he clung to the engine till it reached a point over six hundred feet from the water tank where his body was found upon a bridge which the train crossed, and that he there fell or was knocked off because so injured. There was cogent evidence from plaintiff's witnesses that Fanger came in contact with the superstructure of the bridge. We held in that case that to sustain the verdict for plaintiff would offend against the rule that verdicts must be based upon substantial evidence, and not upon speculation and conjecture, and against the rule that a causal connection between negligence and injury must be shown.

In State ex rel. Boeving v. Cox, supra, plaintiff was injured in attempting to pull a stick out of a hole in the screen of a cotton boll-extractor. There was no proof that he was expected to remove sticks from the machine while it was in operation, nor that it was necessary for him to do so. Assuming that defendant was guilty of negligence in permitting the existence of the hole, this court held that such negligence was not the proximate cause of his injury, but that his own voluntary act in putting his hand into the moving machinery was an independent intervening cause, and that the negligence complained of was not the direct or proximate cause of his injury.

In none of the cases above referred to are the facts similar to those in the instant case; and without taking space to review the numerous other cases with which relator claims respondents' opinion conflicts on the question of proximate cause, it is sufficient to say that none approximate more nearly in their facts to the facts of this case than the three mentioned. Indeed, it is apparent from relator's brief that the cases are cited for their statement of the general rule rather than as being based upon a similar state of facts.

Respondents in their opinion recognize the legal principle contended for by appellant and as annonced by this court in the cases cited. They say that on the facts shown it would be folly in the light of the common knowledge of mankind, to say that the turning of the truck played no part in causing the body to fall where it did, but say further:

"However, it by no means follows that the turning of the truck was the sole and proximate cause of the casualty itself, since the jury, as reasonable men, might very properly and legitimately have found that the dropping of the wheel of the truck into the hole, producing a very perceptible jar and jerk, was sufficient to cause the decedent to lose his balance and fall, standing as he was with his left hand resting on the bare surface of the top of the cab and his right hand encumbered with his dinner pail. That such consequence was highly probable is obvious when we consider that the jar and jerk came as the truck was driven into the hole at a speed of at least twelve or fifteen miles an hour, and that the tires and rear spring of the truck were solid. Aside from the presumption which exists that the decedent was in the exercise of due care, in the absence of competent proof to the contrary, there is nothing in the evidence to indicate that he had ever ridden over the street except upon one former occasion, or that he even knew that the hole was in the street, so that he might have been impelled to secure a firmer grip, if possible, in order to have counteracted the force and effect of the jar.

"Proximate cause is commonly, and best, defined as that cause which, in a natural and continuous sequence, unbroken by any efficient intervening cause, produced the result complained of, and without which the result would not have occurred. [Kennedy v. Independent Quarry & Construction Co., 316 Mo. 782, 291 S. W. 475; Jaquith v. Fayette R. Plumb, Inc. (Mo. Sup.), 254 S. W. 89; Northern v. Chesapeake & Gulf Fisheries Co. (Mo. Sup.), 8 S. W. (2d) 982; George v. Kansas City S. Ry. Co. (Mo. App.), 286 S. W. 130; 45 C. J. 898.] In other words, it is sufficient to constitute proximate cause that the negligence for which recovery is sought was the efficient cause which set in motion the chain of circumstances leading up to the injury itself. [Wengert v. Lyons (Mo. App.), 273 S. W. 143; Strayer v. Quincy, O. & K. C. R. Co., 170 Mo. App. 514, 156 S. W. 732.] And the primary cause will be the proximate cause where it is so linked and bound to the succeeding events that all create or become a continuous whole, the first so operating upon the others as to make it primarily productive of the injury. [Wengert v. Lyons, supra; Johnson v. Ambursen Hydraulic Construction Co., 188 Mo. App. 105, 173 S. W. 1081; 45 C. J. 910.]

"In determining whether the continuous sequence of events has been broken by an efficient intervening cause so as to constitute the latter the proximate cause of the injury, it is understood that for a

cause to be properly denominated as efficient and intervening, it must be a new and independent force or agency which breaks the chain of causal connection between the original wrong and the final consequence. Such intervening act or event must be sufficient to stand of itself as the cause of the injury, and be one but for which the injury would not have occurred; and if the new cause serves merely to accelerate the effect of an original cause, which alone was sufficient to produce the injury, the first cause will still be considered the proximate cause. [45 C. J. 930, and cases cited.]

"Moreover, in this same connection it is significant to note that the courts, in dealing with this ever troublesome question, have found it to be the part of wisdom to announce a further rule, which is that the question of proximate cause is ordinarily, although concededly not always, a question for the jury. [Northern v. Chesapeake & Gulf Fisheries Co., supra; Hogan v. Fleming, 317 Mo. 524, 297 S. W. 404; Lovett v. Kansas City T. Ry. Co., 316 Mo. 1246, 295 S. W. 89; Kidd.v. Chicago, R. I. & P. Ry. Co., 310 Mo. 1, 274 S. W. 1079.]

"Applying the above elements of the doctrine under discussion to the particular facts of this case, we are convinced that it was properly for the jury to say whether the negligence of defendant in allowing the hole to remain in the street was the proximate cause of the decedent's fall and death. We have heretofore approved the legitimacy of the inference that the jar of the descent of the wheel into the hole resulted in decedent's losing his balance, to which may be added that it was also fairly inferable that such jerk or jar would have been sufficient to have caused him to fall from the truck had no turn been made, not under any and all circumstances, but in view of the peculiar situation in which he was placed. The causal connection between the loss of balance and the fatal injury was in nowise broken by the fact of the turn, although it may be quite true that the change of the course of the truck accelerated the original consequence of the jerk, at least insofar as it determined upon which side of the truck decedent should fall. However, we have heretofore stated that the mere acceleration of an original cause, itself sufficient to produce the injury, is not the appearance of a new and independent efficient agency, so as to render the latter, rather than the first, event the proximate cause, within contemplation of law. Here there is no violence done to the facts in evidence, or to the ordinary experience of mankind, to say that the dropping of the wheel into the hole in the street, with the resultant jar and jerk, set in motion an unbroken chain of circumstances which directly led up to the fall of decedent from the truck, and was so connected to the succeeding events, that is, to the turn, that all became a continuous whole. We repeat, therefore, that the argument advanced by defendant is not well taken, and that the question of whether the maintenance of the hole in the street was the proximate cause of decedent's death was one for the determination of the jury."

Relator's contention seems to be, not that respondents have erroneously stated the governing principles of law, but rather that the facts do not bring the case within those principles. Relator strenuously argues that the facts stated demonstrate that deceased was hurled from the truck by centrifugal force as it made the turn into Sibley Street, and it stresses the distance from the hole in the pavement to the point where the body was found, as well as the contention that the body was found "around the turn on the south side of Sibley Street." As to the distance, respondents say it was thirty-eight feet, if the platted measurements are correct. The plat was prepared and introduced by defendant and in it defendant assumes the greatest distances shown by the evidence as stated in respondents' opinion. According to that evidence the hole was estimated to be from *eight* to eighteen feet from the north line of Sibley Street and from six to ten feet from the west line of Kingshighway. Even if the distance was thirty-eight feet the truck at fifteen miles per hour would traverse that distance in approximately one and one-half seconds. And if the lesser distance authorized by the stated evidence is taken, it would be traversed at that rate of speed in slightly more than one second. And it is not correct to say that the body was "around the corner on the south side of Sibley Street." Respondents' opinion says the feet extended two and a half feet out into Kingshighway, which would put the body very little west of a line drawn from the hole southward in Kingshighway parallel with the street line. The brick cross-walk spoken of is shown by defendant's plat to be a part of the Kingshighway sidewalk adjacent to the curb in that street, so that the spot where the body lay could as well be said to be in Kingshighway as in Sibley Street. Evidently the turn into Sibley Street had not been completed when Cregger left the truck. He of course knew the route to his destination and having ridden with Summers once before it may be assumed that he knew the turn into Sibley Street would be made. He could sense the speed of the truck and presuming as we must that he was exercising due care for his own safety it naturally follows that he would be prepared to maintain his balance as against the centrifugal force of the turn had he not been thrown off his balance by the unexpected jar and jerk of the truck caused by its striking the hole.

In Hogan v. Fleming, 317 Mo. 524, 535, 297 S. W. 404, 409, this court quoted approvingly from Railway Co. v. Kellogg, 94 U. S. 469, 24 L. Ed. 256, as follows:

"The true rule is, that what is the proximate cause of an injury is ordinarily a question for the jury. It is not a question of science or of legal knowledge. It is to be determined as a fact, in view of the circumstances of fact attending it. . . . In the nature of things, there is in every transaction a succession of events, more

or less dependent upon those preceding, and it is the province of a jury to look at this succession of events or facts, and ascertain whether they are naturally and probably connected with each other by a continuous sequence, or are dissevered by new and independent agencies, and this must be determined in view of the circumstances existing at the time.''

Moreover, we have held on the question of proximate cause, that: ''If a defendant is negligent and his negligence combines with that of another, or with any other independent intervening cause, he is liable, although his negligence was not the sole negligence or the sole proximate cause, and although his negligence without such other independent, intervening cause would not have produced the injury.'' [Harrison v. Electric Light Co., 195 Mo. 606, 625, 93 S. W. 951, 7 L. R. A. (N. S.) 293, and cases cited; Hogan v. Fleming, supra. See also, Northern v. Chesapeake & Gulf Fisheries Co., 8 S. W. (2d) 982; Brash v. City of St. Louis, 161 Mo. 433, 61 S. W. 808.]

Our authority to supervise the findings of fact and conclusions of law of a court of appeals is limited to ''those cases wherein it clearly appears that the Court of Appeals has announced some general principle of law contrary to the last previous announcement of this court upon the subject, or, on a given state of facts, such Court of Appeals has announced and applied a conclusion of law or equity contrary to a conclusion announced and applied by this court upon the same, or a similar state of facts.'' [State ex rel. v. Daues et al., 323 Mo. 388, 19 S. W. (2d) 700, 703, and cases cited.] We find no such conflict with our rulings in respondents' conclusion that upon the facts of this case the question of proximate cause was for the jury.

II. Relator's second contention is, as stated by respondents, closely associated with the first. It is that where the evidence shows that the injury may have resulted from one of two causes, for one of which but not for the other defendant could be held liable, the plaintiff must show with reasonable certainty that the cause for which defendant would be liable was the proximate cause of the injury; and that if, as between the two possible causes the evidence leaves the proximate cause of the injury to speculation and conjecture, plaintiff's case must fail. Relator claims that respondents' opinion conflicts with the following decisions announcing that rule, viz: Warner v. Railroad, 178 Mo. 125, 134, 77 S. W. 67; Kane v. Mo. Pac. Ry. Co., supra; Hamilton v. Railway Co., supra; Van Bibber v. Swift & Co., supra; Coin v. Lounge Co., 222 Mo. 488, 508, 121 S. W. 1; Goransson v. Mfg. Co., 186 Mo. 300, 307, 85 S. W. 338; Strother v. Railway Co., 188 S. W. 1102, 1105; Fuchs v. City of St. Louis, 133 Mo. 168, 196.

The decisions of this court referred to announce the principle of law contended for by relator. On the facts, none of them are sufficiently similar to justify specific analysis. The principle is well established and is recognized in respondents' opinion. On this point they say:

"This contention is disproved from the fact that the two designated causes were not distinct and independent, but were of such nature that the turning of the truck merely added to the effect of the jar, as we have heretofore said. In the absence of proof that decedent was accustomed to driving over Kingshighway, in the vicinity of the hole, it is entirely reasonable to infer that he was unaware of the danger to be avoided on account of the same; while, on the other hand, he had been working on the same job with Summers for as much as a week, in consequence of which he must have known the route to his destination, and would the more likely have seen to his security in making the turn, which he was bound to have expected, and which he could readily have perceived as he looked ahead over the top of the cab. We conclude, therefore, that plaintiff bore her burden of showing with reasonable certainty that the jarring of the truck was the proximate cause of her husband's misfortune, and that it cannot properly be said, on demurrer to the evidence, that the matter was left solely to speculation and conjecture, as defendant would have us believe."

In discussing the rule now under consideration in Cech v. Mallinckrodt Chemical Co., 323 Mo. 601, 20 S. W. (2d) 509, we said:

"It is but another way of saying that there must be evidence produced from which the jury may reasonably and properly find that the injury was caused by the negligence charged and for which defendant is liable."

Causal connection need not be shown by direct and positive evidence, but may be shown by other facts and circumstances, and in the consideration of a demurrer to the evidence every reasonable inference should be indulged in favor of the plaintiff. [Kane v. Mo. Pac. Ry. Co., supra; Cech v. Mallinckrodt Chemical Co., supra, and cases cited.] And plaintiff's evidence need not exclude the *possibility* of accident or of a cause for which defendant is not liable, but it is sufficient to make a submissible case if there is substantial evidence that the injury resulted from a cause for which defendant is liable. [Cech v. Mallinckrodt Chemical Co., supra.] In considering the evidence on demurrer an inference unfavorable to plaintiff, that could be drawn from the facts proved should not be drawn if others more favorable to plaintiff can with equal propriety be deduced. [Rau v. Robertson (Mo.), 260 S. W. 751, 754.] In Settle v. Railroad, 127 Mo. 336, 30 S. W. 125, which has been frequently cited with approval by this court, a brakeman fell from

a moving car and was killed. The negligence charged was the bent and defective condition of the handhold on the car. This court said that the inference might fairly be drawn that he fell because in the emergency he was unable to secure a firm hold on the handhold because of its defective condition; that, on the contrary, it might as readily and fairly be inferred from the facts that the slipping of his feet from the foot-rest on which he stood was the sole cause of his fall, he having taken only such hold as would sustain his balance while on the foot-rest and being unable to get a better hold when his feet slipped, for which latter cause defendant would not be liable; and that, there being evidence from which the jury could reasonably conclude that the defective condition of the handhold was the cause of the injury, the jury should have been left to draw the correct inference from the facts in evidence. See also Soeder v. Railroad Co., 100 Mo. 673, 13 S. W. 714.

There is a presumption against suicide, and in this case against lack of due care for his own safety which excludes these as possible explanations of Cregger's death, so far as concerns the question of a demurrer to the evidence. [Stewart v. Laclede Gas Light Co. (Mo.), 241 S. W. 909, 912.] As said by respondents, it is fairly inferable from the evidence that Cregger did not know of the hole in the pavement, but he did know the route to his destination and must have known that the turn would be made into Sibley Street "and would more likely have seen to his security in making the turn, which he was bound to have expected, and which he could readily have perceived as he looked over the top of the cab." We are not persuaded that respondents' opinion conflicts with our former rulings on this point.

III. Relator's next contention is that respondents' opinion conflicts with the following decisions of this court holding that a case cannot be made by building inference upon inference "so that the proximate cause of the injury is left to speculation and conjecture," viz: State ex rel. City of Macon v. Trimble, supra; State ex rel. Public Utilities Co. v. Cox, supra; Layton v. Chinberg, supra; Cardinale v. Kemp, 309 Mo. 241, 275-6, 274 S. W. 437; Hamilton v. Ry. Co., supra; Yarnell v. Railroad, supra.

Respondents say, relative to this contention:

"For its final point defendant argues that the conclusion that the deceased was thrown from the truck by reason of the dropping of the wheel into the hole can be arrived at only by piling inference upon inference, that is, by first inferring that he was thrown from the truck, and then, upon such inference, basing the further inference that the cause of the fall was the presence of the hole in the street.

"It cannot be denied that the conclusion that the decedent, fell from the truck rests upon an inference, but it does not follow that the second inference is built upon the first. There is no limit to the number of inferences which may be drawn in a given case, provided each rests upon its own facts in evidence, and is not based upon another or preceding inference. In the case at hand, the inference that the jarring of the truck was the proximate cause of decedent's fall does not rest upon the inference that he fell, coupled with the mere fact that there was a hole in the street near where the body was found. To the contrary, it is founded upon the positive testimony relative to the decedent's insecure position in the truck, and the severity of the jar or jerk felt by Summers when the wheel dropped into the hole. Consequently, having been a rational deduction from the facts in proof, the inference that the jar was the proximate cause of the fall is legitimate, and defendant's argument to the contrary must be disallowed."

We have examined the cases relied upon by relator. They announce the rule contended for and apply it to the evidentiary facts, or absence of such facts, shown in the respective cases. Without reviewing those cases in detail it is sufficient to say that we do not think respondents' opinion, the evidentiary facts considered, contravenes the rule announced in those decisions. Indeed what we have said in Paragraphs I and II hereof virtually disposes of this contention. The holding that upon the evidence stated plaintiff made a submissible case on the issue of proximate cause and upon the question of the negligence charged being that cause, notwithstanding there may have been a contributing cause for which defendant would not be liable, is in effect a holding that plaintiff's case is not one of inference built upon inference.

IV. Relator further urges that respondents' opinion conflicts with decisions of this court upon the same or a similar state of facts, viz: State ex rel. City of Macon v. Trimble, supra; State ex rel. Public Utilities Co. v. Cox, supra; State ex rel. Insurance Co. v. Trimble, 300 S. W. 812; State ex rel. Boeving v. Cox, supra; State ex rel. Railroad Co. v. Bland, supra; State ex rel. Gordon v. Trimble, 300 S. W. 475, 478.

We have hereinbefore briefly referred to the facts in State ex rel. Public Utilities Co. v. Cox, supra, and State ex rel. Boeving v. Cox, supra. In neither are the facts similar. State ex rel. City of Macon v. Trimble, supra, was a case in which plaintiff was injured by an electric shock claimed to have been due to defendants' negligence. The facts are not similar.

We have carefully examined the other cases referred to by relator, not only under this point, but under other points of its brief, and find none of them more nearly like the instant case in

the facts presented than those above mentioned, the pertinent facts of which we epitomized. We shall not further lengthen this opinion by reviewing the numerous cases in detail. Suffice it to say that in our judgment no case in which this court held that the plaintiff did not make a submissible case presents a state of facts sufficiently like the facts of the instant case to warrant us in holding that respondents' opinion announces a principle of law contrary to that announced by this court or announces and applies a conclusion of law contrary to a conclusion announced and applied by this court upon the same or a similar state of facts.

It results that in our opinion our writ should be quashed and it is so ordered. *Davis* and *Henwood, CC.*, concur.

PER CURIAM:—From the foregoing opinion, *Blair, P. J.*, dissents; *White, J.*, concurs; *Walker, J.*, absent. There being no opinion adopted by the judges of Division Two, the cause is ordered transferred to Court en Banc.

PER CURIAM:—The opinion by COOLEY, C., in Division Two is adopted by Court en Banc; all concur, except *Blair, J.*, who dissents in a separate opinion.

BLAIR, J. (dissenting).—I did not concur in the divisional opinion, and I am unable to concur therein after further enlightenment from the argument in Court en Banc. I find no fault with the principles of law announced in respondents' opinion; but I think the application of those principles, made by respondents to the facts at bar, is in conflict with the decisions of this court upon similar facts.

Respondents held that the verdict of the jury may not rest on conjecture or speculation, yet I think that is necessarily the only basis for the verdict of the jury in this case. From the circumstance that the deceased's body was found lying in the street at a point where it would likely be thrown from the truck as it turned into Sibley Street, the conclusion as a fact that deceased was thrown off upon the pavement when the truck made the turn and as the result thereof was justified. But, that the jar or jerk, caused by the wheel of the truck dropping into a hole in Kingshighway from twenty-eight to thirty-eight feet from the point where deceased's body was found and from eight to eighteen feet north of the street intersection, contributed to the fall of the deceased, is mere speculation and conjecture. In ruling that the jury could find that the hole in the street was a contributing cause to deceased's death, respondents have contravened the rule firmly established by the decisions of this court and fully recognized by them in their opinion that a finding by the jury cannot be allowed to rest upon speculation or conjecture.

I think respondents' opinion also violates our well established rule that a fact necessary to be proven cannot be established by building inference upon inference. The jury had to find that the jerk or jar contributed to deceased's fall and death, before it could return a verdict against relator. Yet, no one saw the effect upon deceased when the right hind wheel of the truck dropped into the hole in the street. It was necessary for plaintiff below to show that deceased lost his balance as the result of the wheel dropping into the hole and that he had not regained his balance before the centrifugal force, upon the turn to the right, began to operate on his body.

Assuming that it was permissible to draw the inference that deceased did not anticipate the jerk and therefore lost his balance when the jerk occurred, the further inference must be drawn that deceased did not recover his balance before the truck started to turn into Sibley Street and centrifugal force began to affect his equilibrium. There is no justification for an inference that the turn to the right had started when the jerk occurred, because the opinion itself recites proof to the contrary, to-wit, that the truck was turning slightly to the left at the time the wheel dropped into the hole and was moving toward the center of Kingshighway in order to make the turn into Sibley Street.

Therefore the finding that the hole in the street and the jerk and jar, resulting when the wheel dropped into it, contributed to deceased's death is necessarily established by building inference upon inference. It is unnecessary to cite cases announcing the rule forbidding proof by such means. Respondents fully recognized the rule, but, in my judgment, they have failed to make proper application of the rule to the facts in this case and, in so failing, have put their opinion in conflict with controlling decisions of this court.

For the reasons stated, I think the opinion should be quashed and, from the contrary conclusion reached by the majority, I respectfully dissent.