(122 App. Div. 480.)

### DUDLEY v. ABRAHAM et al.

(Supreme Court, Appellate Division, Second Department. November 29, 1907.)

NEGLIGENCE—PERSONAL INJURIES—SUBMISSION TO JURY.

> In an action for injuries to plaintiff through slipping on a wet or greasy spot on the floor of defendant's store, evidence *held* insufficient to require the submission of the case to the jury.

> [Ed. Note.—For cases in point, see Cent. Dig. vol. 37, Negligence, §§ 279–302.]

Hooker, J., dissenting.

Appeal from Trial Term.

Action by Minnie Ida Dudley against Abraham Abraham and others. From a judgment dismissing her complaint, and from an order denying her motion for new trial, plaintiff appeals. Affirmed.

Argued before HIRSCHBERG, P. J., and HOOKER, GAYNOR, RICH, and MILLER, JJ.

George F. Hickey, for appellant.
Frederick Hulse, for respondents.

GAYNOR, J. The plaintiff fell on the floor about two feet from the projecting base of a stone drinking fountain in a large open space in the center of the defendants' store. There were bowls and faucets at the top of the fountain, and drinking cups chained there. It is impossible to make out from the testimony of the plaintiff and her daughter whether they say she slipped on water or on grease or some slimy substance; and they were the only witnesses for the plaintiff on that head. The plaintiff said she looked at the floor after she fell, and continued:

"It was wet, and there was dirt—something slimy on it." "After I fell I saw a wet spot or something of that sort." "I do not think I could tell ex-

107 N.Y.S.—7

actly how large was the wet spot." "After I had fallen I saw there was something wet and slimy on that floor. I cannot tell you how large was that spot where I say looked wet; it was a run lengthwise, just where my heel had taken the water." "I cannot recollect; all I can recollect is seeing the mark of my heel on the wet floor, the impression where I had fallen; that is all I can remember. I do not mean to say this floor was all wet all around there. I cannot exactly say how large was this place where I say was wet; I would only have to guess at it."

She said the mark made by her heel was about as long as the back of a chair (agreed upon by counsel as 16 inches) and as wide as her heel. "Aside from that mark I could not say how large a place was it that was wet on that floor, because I do not recollect. I have no recollection only of looking and seeing the marks and the water, but I could not specify the length of it or the largeness of the spot." "It was like slime—something slimy that I had slid on the same as you would slide on a banana peel." "It looked just like grease or something that slid and made a ridge right into the wood; just like slime, water on the dirt." The daughter is equally indefinite. "There was water, and it was slimy—you know how oil looks." "There was a large sized puddle, I should say there, of water, and she slid, you could see just where her heel went." "Well, it looked dirty looking to me." She finally said the "puddle" was "just about as large as that book" (a volume of our Reports).

No jury could do more than guess from this what the plaintiff slipped on, if she slipped at all. But if it could be found to be grease, or fruit, or some other slimy or slippery substance, there was no evidence that the defendants put it there, or that it had been there long enough for them to see it and clean it up. There is no way to prevent people, especially children, from dropping things on floors. And if it was only water, the case is the same. There is no evidence that it came from the fountain. And it could not have come from there unless some one threw it on the floor needlessly or mischievously. It would be more reasonable to suppose that some child wet the floor, a thing common enough. Nor was a little water on a floor ever taken to be dangerous until this action was brought. On wet days, and when there is a snow fall, the floors of stores and public places are wet in many places from the feet and dripping garments and umbrellas. It would be going altogether too far, and encouraging the bringing of cases like this, of which there are already too many, to hold as matter of law that this case was for the jury. O'Reilly v. L. I. R. Co., 4 App. Div. 139, 38 N. Y. Supp. 779; Id., 15 App. Div. 79, 44 N. Y. Supp. 264; Kelly v. Otterstedt, 80 App. Div. 398, 80 N. Y. Supp. 1008.

The judgment should be affirmed.

Judgment and order affirmed, with costs.

MILLER and RICH, JJ., concur. HIRSCHBERG, P. J., not voting.

HOOKER, J. (dissenting). The jury would have been justified in finding, had the case been submitted for its determination, that the plaintiff slipped upon a spot near a water fountain on the main floor

of the defendants' department store, which had the appearance of being wet and slimy. The public was tacitly invited to walk over the spot where plaintiff fell, and it was the duty of the defendants to exercise reasonable care to keep the floor in a safe condition. Quirk v. Siegel-Cooper Co., 43 App. Div. 464, 60 N. Y. Supp. 228; Graham v. Bauland Co., 97 App. Div. 141, 89 N. Y. Supp. 595. While it may be true, as urged by the respondents, that the mere incidental spilling of water from the fountain upon the floor would not create a condition which a reasonable person would apprehend to be dangerous, the inferences most favorable to the plaintiff present a different case. The jury were authorized to find that the defendants were not in the exercise of reasonable care in permitting that part of the floor where plaintiff fell to be in a slimy condition, for one might readily enough slip thereon. See Dent v. Grimm, 65 App. Div. 81, 72 N. Y. Supp. 471.

The judgment and order should be reversed, and a new trial granted; costs to abide the event.