HOLMES v. UNITED THEATRES CO.

THEATRES AND SHOWS — NEGLIGENCE — EVIDENCE — SUFFICIENCY— CONSTRUCTIVE NOTICE.

Evidence, in an action for injuries sustained by plaintiff in entering defendant's theatre, that she tripped upon a mat at the entry, which she testified looked humped up about three inches after the injury, was insufficient to

show that the owner ought to have known of the defect which plaintiff claimed existed, or that he had constructive notice of the condition.

Error to Kent; Brown, J. Submitted April 28, 1915. (Docket No. 152.) Decided June 7, 1915.

Case by Clara Holmes against the United Theatres Company for personal injuries. Judgment for defendant on a verdict directed by the court. Plaintiff brings error. Affirmed.

*Major L. Dunham, H. Monroe Dunham,* and *John M. Dunham,* for appellant.

*Stevens T. Mason,* for appellee.

MOORE, J. This is a personal injury case. From a directed verdict in favor of the defendant the case is brought here by writ of error. It is insisted by counsel for appellant that the case should have been submitted to the jury, and that is the only question involved. The only testimony tending to show negligence on the part of defendant is the following:

"My full name is Clara Holmes. * * * On the 29th day of January, 1914, I worked from 8 o'clock in the morning until half past 11; at that time I went over to the Vaudette, on Monroe avenue, just opposite the Herpolsheimer Building. I did not purchase a ticket that day because I fell. I caught my foot on the mat just as I was stepping up in the entrance. The entrance is approximately 25 feet wide, and the front of the Vaudette is back in from the street about 8 or 10 feet. The entrance to the Vaudette is at the right of the ticket window, near the south wall of the building. The exit is to the left, up near the north wall. Between these two doors is a brass rail and the mats, and the brass rail is just in front of the window, and the window is between the doors. That is where they sell the tickets. This flooring was covered with mats, and it inclines as you go up to

the window. These mats were wire; they looked like it to me; I think wire and rubber mats. There were several mats; I think about three sets; and they ran parallel with the street. The first mat I stepped on was level. I did not stop to notice the second mat until after I fell. I saw it just after I fell, and it was humped up.

"Q. Did you see it just after you fell?

"A. Yes, sir.

"Q. What did it look like at that time?

"A. It was humped up.

"Q. About how many inches do you think it was humped up?

"A. About 3 inches.

"Q. That was after you had fallen on it, I think you said?

"A. Yes, sir.

"Q. But whether or not it was more than that before you fell you do not know; is that right?

"A. I could not say, because I did not see it.

"Q. But after you fell—

"A. After I fell the mat was up.

"Q. Still up about 3 inches?

"A. Yes, sir. It was that way after I was up. I was helped up by some friends; I was hurt; my arm was broken."

Miss Ronan testified:

"On the 29th day of last January I was directly back of her [Miss Holmes] about three feet from her at the time she crossed the street going towards the Monroe Vaudette. I was also going to the Vaudette. I did not see her go into the Vaudette. As she got near the ticket window, then she got her foot caught on the mat, and fell. I saw her fall. I helped Mrs. Holmes to her feet, and saw the condition of her arm. The mats covering this incline run parallel with the street, and the first mat was smooth. I didn't see the other mat before she fell. I saw the mats after she fell, for when I got Mrs. Holmes to her feet I called a gentleman's attention to the mat and herself. I would say that it had a ragged, rough edge, and was raised about three inches from the floor when Mrs. Holmes got to her feet; that was after she fell."

Later the case was reopened, and plaintiff was re-called.  She testified:

"When I fell my left foot caught in the rug; as I stepped it went under the rug.  I felt it as I fell; there was something over the top of my boot, but I fell so quick.

"Q. Can you tell us how far up on your foot the mat came when your foot went under it?

"A. The most of my foot went under the mat.

"Q. When you fell, how near were you to this ticket window?

"A. Well, I just missed the rail when I fell.  The rail, I think, is about four feet in front of the ticket window; I could not say exactly.  The only employees of the defendant who were there were the lady at the ticket window and the gentleman that stands at the door.  He stepped right out there, but they had not picked me up yet.  Those are all of the people who were there at that time.  The ticket seller saw me when I fell because I looked at her and she looked at me.  I saw her.  I saw her look right at me, she sat right still.  I could not say how far up from the floor she sits; she was quite high up in the place. I don't know whether or not the mat was humped up, or raised up before I got there, because I did not see it, but I know that my foot went under the mat.   I stepped with my right one, and my left foot went under the mat."

The argument of counsel for appellant is (we quote from his brief) :

"It was the duty of the defendant at the very door of its theater to which, and through which, it invited the public to not have placed there, or permitted to have been placed there, any matting or other thing that could buckle or curl up, against which or under which those going into that theater could hit his or her foot, or catch his or her foot under it, so as to cause an injury.

"It amounted to negligence when defendant placed at this entrance strips of matting that were not fastened down.  Add to this the fact that they were a kind which would buckle up, and that negligence be-

comes more than ordinary negligence. So that, we contend, regardless of defendant's compliance with the duty of inspection, there was negligence in placing and maintaining these mats.

"This is just what defendant did. Upon its own premises, at the very door going into its theater, it placed a made up matting that could and did buckle up, that did so buckle up that plaintiff's foot went under it, and by reason thereof she was thrown forward and down, and received the injury already mentioned."

Many cases are cited by counsel. They say of them:

"It may seem to this court that we have cited a great many cases which are not in point with the case at bar, but we feel that they all enunciate the doctrine contended for here."

We have examined all of these cases with care. The one nearest the instant case is *Nephler* v. *Woodward*, 200 Mo. 179 (98 S. W. 488), where the plaintiff was injured by tripping; her foot having caught in a hole in the aisle carpet while being shown to a seat in the theater. There was testimony showing that another person some days previously had tripped at the same hole. The court recognized the doctrine that the defect must have been known to defendant, or to have been in existence so long that he ought to have known if there was to be liability.

A case very much like the present case is *Toland* v. *Furniture Co.*, 175 Mass. 476 (56 N. E. 608). The court said:

"What the plaintiff relies on is that the small mat between the top of the stairs and the long mat was curled up and out of repair, and worn on the edge next to the long mat, and that that caused her to trip and fall. In order to entitle her to recover on that ground, she was bound to show that that was its condition at the time of the accident, and that the defendant knew it, or in the exercise of reasonable care ought to have known it, and to have remedied it."

The court then reviewed the evidence of which there was more than in the instant case:

"Taking into account the character of the alleged defect, we think that this evidence, if it does not fall short of showing that there was a defective condition at the time of the accident, at least falls short of showing that, if there was such a condition, it had been there so long that the defendant knew or ought to have known of it. The evidence is as consistent with the existence of the defect, if there was one, for a few moments only before the accident, as it is with its existence for a longer time. It does not seem to us, therefore, that the plaintiff has sustained the burden of showing that the defect (if there was one) had existed so long before the accident that the defendant, in the exercise of reasonable care, ought to have known of it and remedied it."

See, also, *De Velin* v. *Swanson* (R. I.), 72 Atl. 388; *Norton* v. *Hudner,* 213 Mass. 257 (100 N. E. 546, 44 L. R. A. [N. S.] 79); *Dwyer* v. *Hill Brothers Co.,* 79 App. Div. 45, 79 N. Y. Supp. 785; *Reeves* v. *Fourteenth St. Store,* 110 App. Div. 735, 96 N. Y. Supp. 448; *Dudley* v. *Abraham,* 122 App. Div. 480, 107 N. Y. Supp. 97; *Meyer* v. *Chair Co.,* 180 Mich. 604 (147 N. W. 488).

Judgment is affirmed.

BROOKE, C. J., and McALVAY, KUHN, STONE, OSTRANDER, BIRD, and STEERE, JJ., concurred.