YARINGTON *v.* HUCK.

1. NEGLIGENCE—PERSONAL INJURIES—EVIDENCE—SUFFICIENCY.
    In an action for personal injuries due to a fall, alleged to have been caused by a hole in a rug in defendant's public place of business, evidence of defendant's negligence, *held,* sufficient to present a question for the jury.

2. APPEAL AND ERROR—HUSBAND AND WIFE—DAMAGES—TRIAL—INSTRUCTIONS—HARMLESS ERROR.
    Although the trial court erroneously instructed the jury that they could allow plaintiff, a married woman, damages for interference with her household duties, where no such claim was made by plaintiff, and the error is not reflected in the verdict, the case will not be reversed therefor.

Error to Wayne; Webster (Clyde I.), J. Submitted October 7, 1921. (Docket No. 62.) Decided March 30, 1922.

Case by Marietta Yarington against Otto Huck and others, copartners as Huck Brothers, for personal injuries. Judgment for plaintiff. Defendants bring error. Affirmed.

*John H. Dohrman,* for appellants.

*Clarence P. Milligan,* for appellee.

MOORE, J. The plaintiff, a married woman 65 years of age, in company with her husband and a niece, Esther Yarington, and a lady friend, Mrs. Young, both of Buffalo, on October 26, 1919, went to Westwood Inn, a public place, owned and operated by defendants, for a dinner, and it is her claim that after stepping over the threshold of the main door, she caught her

foot in a hole in the matting or runner spread from the door sill to a cigar case, to prevent mud being carried into the dining room on rainy days.   She fell and dislocated her shoulder and claims to have also hurt her hip in the fall.   The defendants claim there was no defect in the rug.   After the plaintiff put in her testimony, and again after all the testimony was in, the defendants asked for a directed verdict.   The case was submitted to a jury which returned a verdict for $1,250.   A motion for a new trial was made and overruled.   The case is brought here by writ of error.

The important question is stated by counsel as follows:

"The defendants contend in this cause that there was no question of fact raised by the testimony, upon which the jury could find them guilty of negligence and that no inference or presumption of negligence did arise from the facts in evidence to warrant the court in charging as in paragraph 3, that they might find that defendants had either actual or constructive notice or knowledge of the existence of the defect and to predicate or base a verdict thereon."   Citing *Holmes* v. *United Theatres Co.,* 186 Mich. 548.

It may be well to quote some of the testimony:

"We entered by the main door from the Michigan avenue side; the main entrance.   I don't remember whether my niece opened the door or whether it stood open, and as I stepped in the door I caught my foot in a hole in the runner just inside the door.   *   *   *
"It was between 2:30 and 3 o'clock in the afternoon when we got there.   The accident occurred just as I stepped inside the door.   I did not get a foot from the door.   I just stepped inside, and got possibly two steps, was all.   The door opens in and leads into a long corridor.   You go right out of there into the dining room.   It was quite light in there.   I think it was my right foot that caught in the rug when I took the first step into the hall.   I went in first, then Mrs. Young and the others.
"*Q.* And in falling now, did you—could you get your foot out of this hole in time to save yourself?

"*A.* I had to kick my foot loose, when they went to get me up, I had to kick my foot loose.

"*Q.* From what?

"*A.* From this hole in the rug.

"*Q.* What kind of a looking hole was it, what did it look like to you, the appearance of it?

"*A.* Well, of course in the condition I was in, I did not take particular notice of that.

"*Q.* No?

"*A.* But I knew my foot was caught in the runner, and all I could say was, 'Oh that rug, that rug,' and when I said that they went and picked it right up off the floor and carried it away out of sight.   *   *   * When I went out of the place the rug had been removed.

"*Q.* Well, you refer to it now as a rug, at least I have referred to it as a rug.   Was it a rug, or was it one of those fiber runners?

"*A.* I should imagine it was one of those fiber runners.   It was worn through the center.   I should imagine it was a yard wide and it ran from the door to the show cases.   *   *   *

"*Q.* Did you see the rug as it lay on the floor—was it lying on the floor there?

"*A.* I saw the rug—

"*Q.* Saw the rug?

"*A.* After I caught my foot in it.

"*Q.* After you caught your foot in it?

"*A.* Yes.   *   *   *

"*Q.* Well, now, was it a matter of where you pushed this runner ahead of you and created what might be called a bulge, or a condition of the mat or the runner, that you pushed it ahead of you, was that the trouble, Mrs. Yarington?

"*A.* No, sir; no, sir; I stepped right in.   It seemed to be perfectly smooth, and I stepped right in and caught my foot in the hole as I stepped inside of the door, caught my foot right in the hole of the runner.

"*Q.* Are you positive of that Mrs. Yarington?

"*A.* Yes, sir; yes, sir; yes, sir."

We quote briefly from the testimony of the niece:

"We went up on the veranda and my aunt entered the door first.   I held it open for her from the rear.

"*Q.* Yes?

"*A.* And she went in, she had taken about one step when her foot caught in this grass runner, grass matting that was across the floor, and as she fell she tried to untangle herself but could not, and her foot—or, her shoulder went against the show case, which was there and dislocated it, and she fell over, sort of on her back.

"*Q.* Now, what kind of a matting was this, or what kind of a strip was this that was there?

"*A.* Well, it was about 2½ feet wide, I should imagine, a strip that one would ordinarily use on a door—or on a—

"*Q.* Of what was it made, could you tell, or what did it look like?

"*A.* Well, grass matting, I should call it.

"*Mr. Dohrman:* A what?

"*A.* A grass matting, it was a Japanese matting, it was old and dirty, and I think it had red stripes in it. I cannot tell definitely.

"*Q.* Do you recall particularly the character of the goods it was made of?

"*A.* Yes, sir.

"*Q.* Now did you observe it, as to what its condition was with reference to whether there was a hole in it there?

"*A.* Yes, there was a hole, it was about 10 inches in diameter.

"*Q.* What?

"*A.* It was about 10 inches in diameter and very ragged around the edge—this hole was.

"*Q.* And state whether or not that is what caught the foot of your aunt?

"*A.* Yes, that is what caught the foot of my aunt.

"*Q.* And when that happened—now, just what—did you see her fall?

"*A.* Yes, sir."

There was similar testimony from two other witnesses. There was testimony on the part of the defendants that the rug was got in March and was used whenever it was muddy; that on many days 450 to 500 guests were fed at the inn, most of whom presumably passed over this rug.

The accident, as we have already seen, happened the last of October. This testimony easily distinguishes the case from *Holmes* v. *United Theatres Co., supra.* The case is more like *Nephler* v. *Woodward,* 200 Mo. 179 (98 S. W. 488), where it was held in a case not nearly so favorable for the plaintiff as the instant one that the case was one for the jury.

A more serious question is presented by that part of the charge which reads:

"There has been no testimony of any aggravation of any prior condition of the plaintiff, so that you will not consider that, but only the pain and suffering, the interference with her duties, her household duties, up to the present time and for such further time as you believe the condition will continue, not to exceed in all a period of eleven years, that being by the mortality tables the expectancy of life of this plaintiff. * * *

"You will, of course, not use or exercise any sympathy or prejudice in arriving at your verdict, but if you find, under these statements of law that I have given you, that the plaintiff should recover, then you will award her, as I say, such a reasonable amount as you believe will fairly compensate her for the pain and suffering and the interference with her ordinary household and other duties for her expectancy in life."

Counsel says in relation to these quotations:

"That the court erred in charging the jury that they could award damages to plaintiff, a married woman, for interference with her household and other duties, probably needs no argument here. It was repeated and emphasized and did undoubtedly have an influence on, and was considered by the jury in reaching the amount of their verdict.

"Loss of services are recoverable by the husband in a separate action. *Berger* v. *Jacobs,* 21 Mich. 215, 219; *Tunnicliffe* v. *Railway Co.,* 102 Mich. 624, 628 (32 L. R. A. 142)."

In his motion for a rehearing counsel did not give this charge as one of the reasons. Counsel for appellee says:

"It is finally claimed by appellants that the court charged that plaintiff, a married woman, could recover any damages due to interference with her household duties. This claim is more fanciful than real. No evidence was introduced in the case and no claim was made by the plaintiff for any such damages. Evidence was introduced in the case, showing the inability of the plaintiff to perform her duties after her accident, but such testimony was only introduced to prove the extent of her physical injury. It will be conceded that no argument was made to the jury on any such element."

An examination of the record will show there is a basis for this claim. Eighteen months had elapsed between the time of the accident and the trial. The testimony offered on the part of the plaintiff including an X-ray expert shows serious injuries which continued to the time of the trial. We think the quotations made from the charge should not have been given (*Berger* v. *Jacobs,* and *Tunnicliffe* v. *Railway Co., supra*), but we are also satisfied that the error is not reflected in the verdict.

Judgment is affirmed, with costs to the appellee.

FELLOWS, C. J., and WIEST, CLARK, BIRD, SHARPE, and STEERE, JJ., concurred.

The late Justice STONE took no part in this decision.