TORBET, Respondent, v. F. W. WOOLWORTH COMPANY, Appellant.

(238 N. W. 140.)

(File No. 7109. Opinion filed October 5, 1931.)

*Cherry, Davenport & Braithwaite,* of Sioux Falls, for Appellant.

*H. G. Giddings,* of Mitchell, for Respondent.

WARREN, J.   F. W. Woolworth Company, a corporation, conducts a certain retail store for the sale of merchandise to the public at Mitchell, S. D.   On Tuesday, the 24th day of October, the plaintiff, Minnie Torbet, entered the store, at the south entrance, for the purpose of purchasing merchandise from the appellant.   She walked east through one of the aisles; close to the east end of the store, she inquired about certain notions, and was there told to go back to a certain counter where she could find the merchandise she wanted.   She walked to the place, and completed her purchases and started to walk out, headed west, in the aisle where the customers walk.   After walking a couple of steps, she slipped and fell upon the floor, and suffered a partial impacted fracture of the surgical neck ·of the left femur.

She brought action for damages in the circuit court, and at the time of the trial in February, 1930, the plaintiff was 68 years of age.

The plaintiff testified that she slipped and fell on her left hip, that a couple of girls helped raise her up, that she was placed upon a chair, and then taken to the back room.   A doctor was called who rendered first aid assistance, and she was afterwards placed in the hospital, where the fracture was reduced.

During the trial she was asked if she noticed the condition of the floor at the point where she fell.   She stated that it looked oily.   Upon closer questioning, she said, "Well, it looked awful oily that is all," and she also stated "that it was light in there, yes daylight."   She was asked, "Did you see any spot or pool of oil?" "I didn't pay any attention to that."   "You didn't see any pool of oil, did you?"   "No, I didn't."   She further stated, "as far as I saw it looked awful oily."   "And there wasn't any difference in one spot and another was there?"   "Not as far as I saw.   I didn't look very far."

Mrs. Winter, the respondent's daughter, stated in her examiation, "Well, this spot seemed unusually oily.   The rest I didn't notice very much.   It looked wet, but this spot was real wet and oily where she fell."   She testified to a couple of marks on the floor and also as to the condition of respondent's clothing to the effect that they were dirty on the side she fell.   "The left side, it was covered with oil and some had come through to the under-

clothing." She also testified that she burned the worst part of the dress and that the other part had been used and some of it cleaned with gas. The garments were not produced as evidence. The testimony given by the plaintiffs was to the effect that the floor was of an oily appearance. The strongest testimony was to the effect that it looked like a wet spot on the floor. One of the witnesses testified as follows:

"Q. There was no actual pool of it, just a wet looking spot. A. It was shiny, oily, looking spot.

"Q. And there wasn't any actual fluid on the top of the floor. A. Just wet."

Dr. Malloy, who was called, stated he noticed that the whole floor had been freshly oiled. He further explained as follows: "When I spoke of the floor appearing as if it had been freshly oiled I mean it had the appearance of a recently oiled floor."

The defendant's and appellant's testimony is to the effect that the floor was oiled by one of its employees at 10:30 p. m., the Saturday preceding the accident, with a brand of oil known as Sinclair floor oil, and which was commonly used for that purpose by stores and schools, that the oil was just a little thicker than water, and that there was no lubricating quality in it. It was put on by being sprinkled down each aisle and across the ends. About one and one-third gallons of oil was put on, covering about 1,800 square feet of floor space, and that, after putting the oil on, a mop was used to even the oil over the floor so that no pools would be left on the floor.

The store was closed on Sunday. On Monday, a Valspar powder was sprinkled on the floor, which was left on all day, and was swept off Monday night. The witness testified that, when he swept it off Monday night, there were no wet or damp places left that he could notice. He also testified that the floor was not oiled between Saturday night and the time of the accident on Tuesday afternoon.

The defendant produced a number of witnesses who testified to making an examination of the floors immediately after the accident. Their testimony discloses the facts that a large number of people, somewhere between eight hundred and a thousand people passed through the store on Monday, and a proportionate number passed through on Tuesday before the accident happened, that the

floor where the plaintiff fell was not slippery, and that there was no pool or excess of oil upon the floor.

At the close of plaintiff's evidence, the defendant moved for a directed verdict, which motion was also renewed at the close of all the evidence. Both motions were denied, and thereafter the issues were submitted to the jury upon the court's instructions which were not excepted to by the plaintiff. The defendant excepted to some of the instructions. However, there seems to have been very little disagreement between the parties as to the law governing the case. We find that the respondent quoted a portion of the court's charge from the appellant's brief, which is as follows: "The exact language of the charge and to which no exception was taken by either party and which appellant claims and we concede is the law of this case, was as follows: 'In this connection, gentlemen, in order for the plaintiff to be entitled to recover, you must be satisfied by a preponderance of the evidence that there was left on the floor by the defendant at the time the defendants oiled the floor an excess quantity of oil, and that such excess quantity of oil remained upon the surface of the floor and was there at the time that plaintiff claims to have slipped and fallen thereon, and that it was such excess quantity of oil that caused the plaintiff the injury she claims.'"

The respondent further stated in his brief: "We note that appellant places the same construction upon this instruction as we do. Such concededly being the law of this case, the citation of authorities as to what the law is on the subject is wholly beside the mark."

No exceptions having been taken to the instructions just quoted, it became the law of this case. It was therefore necessary, in order for the plaintiff to recover, that the defendant itself had left an excess quantity of oil upon the surface of the floor at this particular spot on the occasion when the defendant last oiled the floor, and that such excess quantity of oil had remained there and caused the plaintiff to fall.

An examination of the evidence we have set forth and the further review of the evidence discloses the fact that the last oiling of the floor took place Saturday evening, July 21, 1928, and that the accident occurred about 4 o'clock in the afternoon, Tuesday, July 24, 1928; that a floor oil was used which is commonly

used in stores, schools, and other public places. The plaintiff says she saw no oil upon the surface of the floor, although she looked at the floor; all she noticed was that the floor had been recently oiled, that it all looked about the same. Neither did Dr. Malloy, who was there immediately after the accident, and who was a witness for the plaintiff, see any excess surface oil; neither did any of the other many witnesses who were called by the defendant, and who carefully inspected the floor at the precise point and immediately after the accident with the purpose of observing the condition of the floor. The only evidence whatever even indicating the wet spot was the plaintiff's daughter, Mrs. Winter. She does not claim that she actually saw any surface oil, but does claim in substance that she saw a wet spot with marks such as would be left by sliding heels, and that, after the accident, there were stains upon her mother's dress and underclothing such as she thinks would be left by oil. The location where the plaintiff fell was in one of the main aisles of the store. The aisle was about six feet wide, two of the busy counters occupied the adjacent side, and, according to the evidence, some six hundred people walked over the same spot during Monday and Tuesday, and had no difficulty whatever at that particular location, and during those two days nobody had seen any spot or excess quantity of oil. The facts as disclosed by the evidence fail to charge or impute negligence to the defendant. Numerous decisions hold that upon the statement of facts such as disclosed by the evidence in this case the plaintiff will not be permitted to recover.

The rule of law governing this case among the many leading authorities is, we believe, best expressed in the case of Kipp v. F. W. Woolworth & Co., 150 App. Div. 283, 134 N. Y. S. 646, 647:

"There is absolutely no evidence that the defendant had made any pool of oil upon the floor, and there is not a particle of evidence that the condition described by the plaintiff had existed for one minute prior to her falling. So far as the evidence discloses, the oil (if it was oil) may have been poured on the floor, or leaked on the floor, from a can in the hands of any one of the many people who were concededly in and out of this store during the day, and there was clearly no warrant for permitting the jury to guess upon this question. * * * The defendant had a right to oil its floors in the usual way. No negligence could be predicated

upon that, and unless it permitted pools of oil to form, it would not be liable simply because some one happened to slip upon an oiled spot, unless it had some notice of its dangerous condition. * * * But the fair inference from the evidence is merely that at this particular point the oil had not been as fully absorbed by the floor as was general, and there is no evidence that this was apparent to ordinary observation, or that there was anything which would naturally give notice to the defendant of the alleged dangerous condition."

The Supreme Court of New Jersey treated the amount of care a proprietor owes to a customer in the case of Rom v. Huber, 93 N. J. Law, 360, 108 A. 361, as follows: "The defendant is not an insurer of the safety of his patrons against accidents. It must appear that the condition which produced the fall had either been in fact brought to the previous notice of the defendant, or, failing in proof of such actual notice, the condition had existed for such a space of time as would have afforded the defendant sufficient opportunity to make proper inspection as to the safety of the place."

The Colorado Court of Appeals treated the defendant's duty to its patrons in John Thompson Grocery Company v. Phillips, 22 Colo. App. 428, 125 P. 563, 566: "We hold it to be the rule that in the case of a merchant, where the public are invited on his premises to inspect and purchase his goods, he is held to a greater degree of care and diligence than otherwise, yet he cannot be held to be an insurer of the safety of his patrons."

Upon further examination of the evidence and the entire record and the motions for a directed verdict, we believe that the court should have directed a verdict for the defendant upon the authority of Jerke v. Delmont State Bank, 54 S. D. 446, 223 N. W. 585, 589, 72 A. L. R. 7: "Before there is anything for submission to a jury, the evidence offered as to the ultimate facts must be such that the application of normal intellectual faculties thereto might by the customary and normal processes of reasoning arrive at different judgments or conclusions. * * * If the proof offered by the party having the burden in support of the existence of ultimate issuable facts is so meager that a reasonable mind could not therefrom arrive at the existence of such ultimate fact, there is nothing for the jury, and the judge not only may, but should, direct a verdict against the party having the burden of proof."

. Numerous citations.support our conclusions in this case. We are, however, mindful of authorities that hold that one may recover in a case such as this, but they are decidedly in the minority.

In this case we are not only forced to find against the plaintiff to the effect that no cause of action exists against the defendant, but must again reiterate the rule that there was nothing for the jury to pass upon, and that the judge should have directed a verdict against the party having the burden of proof. The order and judgment appealed from are reversed.

POLLEY, P. J., and CAMPBELL, ROBERTS, and RUDOLPH, JJ., concur.