SOPHIA ACHTER, APPELLANT, v. SEARS, ROEBUCK & CO., A CORPORATION, RESPONDENT.—105 S. W. (2d) 959.

St. Louis Court of Appeals. Opinion filed June 1, 1937.

*Forrest M. Hemker* for appellant.

*Anderson, Gilbert & Wolfort* and *Allen & Bierman* for respondent.

HOSTETTER, P. J.—This is a suit brought by plaintiff, Sophia Achter, to recover damages for personal injuries alleged to have been sustained by her on March 16, 1933, in the retail department store operated by defendant in the city of St. Louis. Plaintiff claims to have slipped on some oil that was present on the floor and fallen to her knees and thereby injured.

The petition contained allegations to the effect that on the 16th day of March, 1933, she went into the defendant's store to purchase various articles and while there she was caused to slip and fall to the

floor and thereby to sustain injuries; that defendant was negligent in failing to maintain the premises in a reasonably safe condition for persons walking there; in causing and permitting the floor to become slick so as to render it dangerous; in causing and permitting a coat of oil to accumulate and gather on the floor so as to render it dangerous; and in causing and permitting paper wrappings to remain on the floor so as to render it dangerous.

The answer was a general denial.

Plaintiff testified that she was a woman forty-four years of age; that she left her home in Pevely, Missouri, and came to St. Louis on the morning of March 16, 1933; that she went into the store of defendant, located on South Grand Avenue, to do some shopping and that she got there between 9 and 9:30 in the morning; that she went to various departments on the first floor to make purchases; that she went to the men's department, also on the first floor, and asked for a shirt and looked on several counters with the saleslady and that as she was walking along close to the counter on the center side of the store, her right foot slipped and pitched her forward and tripped her left foot; that she fell on her knees and the saleslady asked her what happened and she said she did not know; that she was helped up and tried to stand on her foot and it pained her; that she then looked at the floor where she had fallen, and saw a mark where her foot had slipped and that her heel had slipped on the floor and that her coat and dress had a spot of oil where she fell on her knee; that the spot of oil was about the size of the print of her knee; that the spot on her coat was even with her knee and that the other one was on her dress, as her coat was open; that the mark was from eight to ten inches long where her heel had slipped on the floor. She stated that she saw oil on the floor; that she had on leather heels.

On cross-examination she stated that her right foot slipped, not forward, but sidewise, in front of her left foot and that she fell forward; that the floor was a hardwood floor with no carpeting, and that she did not notice any oil on the floor before she slipped. Upon inquiry as to whether or not there was a pool of oil on the floor, she stated that there was enough oil which would make the mark on the foot which had slipped. She stated that first of all she could tell it was oil on her clothes and she noticed the mark on the floor which was caused by the slipping of the foot on the oil; that the oil looked different from the drink of water that was brought to her; that the water had not been on the floor. She stated she had never seen any oil on the floor before she fell; that she did not know how long the oil had been on the floor; and that she did not know how it got there, and that she did not know what kind of oil it was that she saw on the floor.

Plaintiff also offered and read in evidence a part of the deposition of James L. Hoffson, as follows:

Mr. Hoffson testified that he was building superintendent and special agent for Sears, Roebuck; that the part of the floor that was not carpeted was treated with oil; that the oil they used was pale paraffin floor oil purchased from the Standard Oil Company; that he supervised the oiling process; that it was his duty to see that the floor was taken care of and oiled; but there wasn't any set day for the oiling; that the manager told him when he wanted the floors oiled; that the last time they had been oiled was February 25, 1933; that the three porters, after the closing of the store Saturday evening, February 25, 1933, applied oil to the floor with mops and allowed it to soak in; that his records showed that was the last time the floor was oiled prior to plaintiff's fall, and that after the oiling he inspected it.

This was all the testimony offered as to the condition of the floor and as to how the accident happened.

The court gave an instruction offered by defendant in the nature of a demurrer to plaintiff's evidence, and plaintiff took an involuntary nonsuit, with leave to move to set the same aside and upon judgment being rendered against plaintiff, and the overruling of her said motion to set the same aside, plaintiff perfected her appeal to this court.

In passing on the sufficiency of the evidence adduced by plaintiff to make a submissible case for the jury, we are not unmindful of the well recognized rule that she is entitled to have such evidence to be taken as true and she is also entitled to the benefit of all reasonable and legitimate inferences deducible therefrom.

We are also not unmindful of the generally recognized rule that a storekeeper is required to use ordinary care to keep his premises in a reasonably safe condition for the benefit of his customers, his invitees.

A fair analysis of the testimony given by and on behalf of plaintiff discloses the following, viz:

1st. An absence of any testimony to the effect that the oil, which plaintiff saw on the floor after she fell, was placed there by the defendant, unless, indeed, we assume it to be some oil placed on the floor by mops nineteen days prior thereto, and this seems out of the range of reasonable probability when we consider that the place near the counter on the first floor where plaintiff fell had been trampled over by hundreds of customers each day.

2nd. There was no evidence that the floor had any oil on it whatsoever save at this spot.

3rd. There was no evidence that this spot was an oilier spot of a floor that appeared to have been oiled.

4th. There was no evidence that there was a depression into which oil accumulated.

5th. The evidence was that plaintiff didn't know what kind of oil it was, nor how long it had been there, nor how it got there.

* 6th. There was no evidence of improper oiling, or the use of improper oil.

7th. There was no evidence that the floor was in any other or different condition than would have resulted from proper oiling.

8th. There was no evidence of notice, either actual or constructive, of the presence of this oil upon the floor.

Assuming that the oil on which plaintiff slipped and fell might have been oil from the regular oiling of the floor with mops nineteen days prior thereto, we observe that there are many highly respectable holdings to the effect that it is not negligence to have and maintain oiled floors. [Spickernagle v. Woolworth, 236 Pa. 496; Diver v. Singer Mfg. Co., 205 P. State Reports 170; Penney v. Robison, 128 Ohio State Reports 627; Bonawitt v. Sisters of Charity of St. Vincent's Hospital, 43 Ohio App. 347; Tenbrink v. F. W. Woolworth Co., 153 Atlantic Reporter 245; Abbott v. Richmond County Country Club, 207 N. Y. S. 183, 1. c. 184; Kipp v. Woolworth Co., 150 App. Div. 283, 134 N. Y. S. 646, loc. cit. 647; Mona v. Erion, 228 N. Y. S. 533, 223 App. Div. 526; Dimarco v. Cupp Grocery Co., 88 Pa. Sup. Reports 449].

In the case of J. C. Penney v. Robison, *supra,* the court said:

"It is likewise a matter of common knowledge that the oiling of floors is a sanitary measure. Its use allays dust and its effect is germicidal in a way.

"It is not the policy of the law to stand in the way of sanitary progress, and while we do not subscribe to the contention that the oiling of floors is a universal practice, we do agree that it is a quite common one. . . .

"We are impressed with the law as announced in the case of Dimarco v. Cupp Grocery Co., 88 Pa. Sup. Ct. 449, that the mere fact that the proprietor may have oiled the floor from time to time is not of itself proof of negligence and in no manner supplies the deficiency of plaintiff's proof in this respect.

"Certainly it is that this law fits the instant case 'like a glove'. That court states in its opinion, 'It is not negligence *per se* to have an oiled floor in a store . . . nor to apply an oily dressing to a floor if it is done in a proper manner and so as not to leave it in any different condition than is usual with oiled or polished floors.' "

Plaintiff in her testimony rather sidestepped the question as to whether there was "a little pool of oil there or not."

In order to correctly interpret her testimony we set out from her cross-examination questions and answers on that subject, after her admission that she did not see any oil until after she fell, viz:

"Q. Was there a little pool of oil there? A. There was enough oil which would make the mark on the foot which had slipped.

"Q. Well, did you see much? Was there a pool of oil there? A. The first of all, I could tell it was oil on my clothes, and certainly when I noticed the mark on the floor, which was caused from the slipping of the foot on the oil.

"Q. Do you know whether it was oil, or just water? A. No, it wasn't water, because they brought me a drink of water and that looked quite different."

For aught that appears from the plaintiff's testimony the oil on the floor, which caused her to slip and sustain injuries, may have been oil that was dropped there by customers. In any event there was no evidence of notice, either actual or constructive, to the defendant of the presence of oil at the place where plaintiff fell. ][Vogt v. Wurmb, 318 Mo. 471, 300 S. W. 278; Varner v. Kroger Grocery & Baking Co. (Mo. App.), 75 S. W. (2d) 585; Kipp v. Woolworth, 150 App. Div. 283, 134 N. Y. S. 646; Woolworth v. Williams (D. C.), 41 Fed. Rep. (2d) 970; Mona v. Erion, 228 N. Y. S. 533, 223 App. Div., 526.]

The defendant was not an insurer of the safety of its customers. [Vogt v. Wurmb, 318 Mo. 471, 300 S. W. 278; Cluett v. Union Electric Light & Power Co., 220 S. W. 865, loc. cit. 868; Woolworth v. Williams (Dist. of Columbia), 41 Fed. Rep. (2d) 970, loc. cit. 971, 972.]

In Cluett v. Union Electric Light and Power Co., *supra*, our Supreme Court stated its attitude on the subject of customers falling on slippery floors as follows:

"Aside from the foregoing, we are of the opinion that defendant should not be held liable, even if the place where plaintiff fell had been previously mopped and left in a damp condition. If liability be sustained in this kind of a case, it would simply open the floodgates to all kinds of speculative litigation that has, according to our conception of the law, already been extended much too far for the public good. We cannot shut our eyes to the fact that throughout the state, and especially in the cities and towns, many of our citizens own homes in which the parlor, and possibly other rooms, are furnished with hardwood floors, upon which rugs are frequently placed. It would not for a moment be deemed unsafe for the owners of these homes to have as guests their friends and relatives. Yet, if liability should attach in this case, it would practically make the owner of each home an insurer of the safety of invited guests as against any damages which might be sustained by them in slipping and falling on the floor. It is evident that the owners of such homes proceed on the theory that invited guests, while exercising ordinary care, can walk in safety on said floors. [Halloran v. Pullman Co., 148 Mo. App., loc. cit. 247, 248, 127 S. W. 946; Chilberg v. Standard

Furniture Co., 63 Wash. 414, 115 Pac. 837, 34 L. R. A. (N. S.) 1079; Reeves v. Fourteenth Street Store, 110 App. Div. 735, 96 N. Y. Supp. 448; Dudley v. Abraham, 122 App. Div. 480, 107 N. Y. Supp. 97; McIntire v. White, 171 Mass. 170, 50 N. E. 524.] We can see no reason for holding that the case at bar should not be placed in the same class as those using hardwood floors.''

In Stein v. Buckingham Realty Co. (Mo. App.), 60 S. W. (2d) 712, loc. cit. 714, this Court stated the following in respect to marble stairways:

''However, we cannot shut our eyes to the fact, which everyone knows, that stairways in hotels and public buildings, especially of the older types, are frequently made of marble; that, where the stairways turn, the stairs themselves are necessarily of fan-shaped construction; and that stairways so constructed, though they are undoubtedly of a character to require more care in their use than do wooden or carpeted stairways, are yet not inherently dangerous, but have been found proper to answer the purpose for which they are designed in the general use to which they have been put throughout the length and breadth of the land. Under such circumstances no jury may be permitted to denominate the mere maintenance of a marble stairway as an act of negligence upon which to base a liability for damages to one falling upon it with knowledge of its construction; and the submission of what amounted to that issue in plaintiff's instruction No. 5 was therefore improper.''

In Spickernagle v. Woolworth, 236 Pa. St. Rep. 496, l. c. 497, appears the following:

''The burden, therefore, rested on the plaintiff to show some specific act of negligence in which we are of the opinion she entirely failed. It is not negligence to oil a floor or to have an oiled floor. [Diver v. Singer Co., 205 Pa. 170.] The plaintiff failed to show how long before the accident the floor had been oiled; that the substance used thereon was improper; that it was oiled in an improper manner, or that it was in any other or different condition than would result from proper oiling. There is no evidence that the material used was not the same as in general use for floor dressings and to have submitted the case to the jury would have to have allowed them to guess these important and unproven facts or at least some of them.''

In Diver v. Singer Mfg. Co., 205 Pa. State Rep. 170, l. c. 172, the court used the following language:

''It was not negligence to have an oiled floor in the room. The ordinary usage of the business was followed both as to the character of the floor and the manner in which it was cared for. This was the test of negligence. [Titus v. Bradford etc., R. R. Co., 136 Pa. 618.] The argumentative statement by the plaintiff that when she fell her dress was spoiled by the oil she fell in, does not sustain the allegation that the floor had been carelessly or negligently dressed.

She did not say that there was loose oil on the floor, and no witness suggested this, and all the testimony was to the contrary. Some of the dressing may have remained on the surface of the floor, and been transferred to her dress by the force of her fall.''

In Bonawitt v. Sisters of Charity of St. Vincent's Hospital, 43 Ohio App. 347, l. c. 348, the court used the following language:

''No evidence was introduced tending to show any negligence in the method used, or in the manner of waxing or polishing the floor, or that any different material was used than is ordinarily used for such purposes. Nor was any evidence introduced tending to show that any greater or lesser quantity was applied than is ordinarily used for such purposes, . . . nor that the result would be in any respect different when the material is applied to linoleum instead of hardwood, the plaintiff relying simply upon the proposition that the floor had been waxed and polished and as a result was slippery.

''An owner in treating a floor may use wax or oil or other substances in the customary manner without incurring liability to one who slips and falls thereon, unless the owner is negligent in the materials he uses or in the manner of applying them. If a recovery is to be had, something more must appear than that the floor had such treatment as is ordinarily applied in the care of floors.''

In Abbott v. Richmond County Country Club, 207 N. Y. S. 183, l. c. 184, the court, in discussing the case where the evidence showed that the plaintiff was walking on a red concrete floor of a golf club, which had been covered with a thin coating of linseed oil to prevent dust, used the following language:

''Concrete floors are more or less slippery, but the use of such materials for floors is not in itself a negligent act, . . . nor can negligence be predicated upon the fact that it was covered with linseed oil to prevent dust (Kipp v. Woolworth & Co., 150 App. Div. 283, 134 N. Y. S. 646; Curtiss v. Lehigh Valley R. R. Co., 233 N. Y. 554, 135 N. E. 915). Such a condition as is presented in the case at bar is not sufficient to charge a reasonably prudent person with a duty of foreseeing that one in the exercise of ordinary care using the floor would be exposed to danger.''

In Kipp v. F. W. Woolworth & Co., 134 N. Y. S. 646, l. c. 647, where plaintiff had testified that there was a spot of oil on the floor about three feet long and about the same width, on which she slipped, and the evidence showed that defendant had oiled its floors six days before the accident, the court stated as follows:

''There is absolutely no evidence that the defendant had made any pool of oil upon the floor, and there is not a particle of evidence that the condition described by plaintiff had existed one minute prior to her falling. So far as the evidence discloses the oil (if it was oil) may have been poured on the floor or leaked on the floor, from a

can in the hands of any one of the many people who were constantly in and out of the store during the day, and there was clearly no warrant to permit the jury to guess upon this question. . . .

"The defendant had a right to oil its floors in the usual way. No negligence could be predicated upon that, and unless it permitted pools of oil to form, it would not be liable simply because someone happened to slip upon an oiled spot unless it had some notice of its dangerous condition. Thousands of people patronized this store every day. No one else is shown to have fallen there. No one claims that anyone ever fell by reason of the oiling of the floors in the manner described by the defendant, and the evidence does not disclose an extraordinary condition; for it is difficult to spell out from the plaintiff's testimony that there was anything more than a discoloration of a space on the floor with oil. Her sister, who was with her, testifies perhaps a little stronger; but the fair inference from the evidence is merely that on this particular point the oil had not been as fully absorbed by the floor as was general, and there is no evidence that this was apparent to ordinary observation or that there was anything which would naturally give notice to the defendant of the alleged dangerous condition.

"There was a clear lack of evidence to support the plaintiff's cause of action and the complaint should have been dismissed."

In Curtiss v. Lehigh Valley R. R. Co., 233 N. Y. Rep. 554, the question involved was that plaintiff intending to board a train at defendant's railroad station, where the floor was being mopped and was wet, fell on the wet floor and sustained injuries. The court held that plaintiff did not make a submissible case.

In Tenbrink v. F. W. Woolworth Co., 153 Atl. Rep. 245, plaintiff, a young woman, walked into defendant's store and slipped and fell and charged that defendant maintained its floor in an oily and dangerous condition, the Supreme Court of Rhode Island in denying her right to recover used the following language:
Pearl Galley 425 March 14.

"The plaintiff Rose, testified that on arising after her fall she noticed a mark about a foot long and the width of her heel on the floor at the place where she fell; that she saw the mark of oil. The testimony of her supporting witness was to the same effect. Neither the plaintiff Rose nor her witness noticed anything unusual about the floor except at the place where the plaintiff fell. . . .

"Even though the case had been reopened, the evidence offered would not have materially assisted the plaintiffs in proving negligence on the part of the defendant. It was not negligent *per se* to oil the floor. It would have been essential to have proven that the oiling was improperly done and there was no offer of any proof in this respect. . . . As the plaintiffs offered no positive proof of negligence the exceptions to the directing of a verdict for the defendant

in each case must be overruled. [Kipp v. F. W. Woolworth & Co., 150 App. Div. 283, 134 N. Y. S. 646; Spickernagle v. Woolworth Co., 236 Pa. 496, 84 A. 909, Ann. Cas 1914 A. 132, and C. Leach v. S. S. Kresge Co. (R. I.), 147 A. 759.]''

In Woolworth v. Williams, the Court of Appeals of the District of Columbia 1930, 41 Fed. Rep. (2d) 970, the plaintiff alleged that defendant permitted a greasy and oily substance to be upon the floor and the court, at page 971, used the following language:

''The defendant is not an insurer against accidents to persons entering its store for the purpose of making purchases or otherwise.''

Citing Mona v. Erion, 223 App. Div. 526, 228 N. Y. S. 533, involving a situation where a customer slipped on a spot of oil, in which the court denied liability as there was no showing by whom the spot was created or for how long it had existed, the court then said:

''To uphold this judgment would be equivalent to making the defendant an insurer of the safety of its customers while in its store and this is not the law. . . .''

In Mona v. Erion, cited *supra*, the court at page 535, said:

''The existence of a spot of oil such as is described by plaintiff does not of itself establish a cause of action, notwithstanding she may have fallen thereon. The store had been in constant use since the floor dressing had been last applied, at least two weeks before and since while it is reasonable to suppose that it had been swept as often as once daily, no attempt is made to show how or by whom the oil spot was created nor as to how long it had existed; so far as appears, it may have come into existence between the time that plaintiff entered the store and when she started to leave, and may have been caused by some person having no connection whatsoever with defendant. As has been said, it is not sufficient for her to show that the oil was there; she must 'go further and show its appearance under circumstances sufficient to charge defendant with responsibility therefor (citing cases). This she makes no attempt to do but rests her case solely on the existence of the oil spot and her fall.

''The fact that defendants from time to time oil this floor is not, of itself, proof of negligence, and in no manner supplies the deficiencies of plaintiff's proof.''

In Dimarco v. Cupp Grocery Co., 88 Pa. Super. Rep. 449, the testimony was to the effect that the floor had been oiled by the employees of defendant just previous to the closing at the end of the week and that plaintiff slipped and fell and was injured, and the court, at page 451 of said opinion, used the following language:

''No liability attaches to the defendant from the mere happening of the accident; it was necessary to prove some specific default or negligence on its part causing plaintiff's fall and injury, or the existence of conditions not obviously dangerous as to amount to evi-

dence from which an inference of negligence would arise before the defendant could be held responsible in damages. . . .

"To recover it was essential to show a failure to exercise reasonable care for the safety of the customer. . . . It is not negligence *per se* to have an oiled floor in a store (Spickernagle v. Woolworth, 236 Pa. 496; Kipp v. Woolworth, 134 N. Y. Supp. 646); nor to apply an oily dressing to a floor if done in a proper manner and so as not to leave it in any different condition than is usual with oiled or polished floors. [Diver v. Singer Mfg. Co., 205 Pa. 172.] The court was asked in this case to infer negligence from the mere happening of the accident and properly refused to do so."

In Tarbet v. F. W. Woolworth & Co., 238 N. W. 140, a case where the plaintiff entered the store of defendant and while walking slipped and fell and sustained injuries and her testimony was to the effect that the floor looked awfully oily; that she did not see any pool of oil; that it looked real wet and oily where she fell and that her clothing became dirty and oil came through on her underwear and that it was further shown that the accident happened on a Tuesday and testimony showed that the floor had been oiled by the defendant on Saturday night preceding the accident with a brand of oil made by the Sinclair Company, the Supreme Court of South Dakota held as follows:

"The rule of law governing this case among the many leading authorities is, we believe, best expressed in the case of Kipp v. F. W. Woolworth & Co., 150 Mo. App. 283, 134 N. Y. S. 646, 647: 'There is absolutely no evidence that the defendant had made any pool of oil upon the floor, and there is not a particle of evidence that the condition described by the plaintiff had existed for one minute prior to her falling. So far as the evidence discloses, the oil (if it was oil) may have been poured on the floor, or leaked on the floor from a can in the hands of any one of the many people who were concededly in and out of this store during the day, and there was clearly no warrant for permitting the jury to guess upon this question. . . . The defendant had a right to oil its floor in the usual way. No negligence could be predicated upon that, and unless it permitted pools of oil to form, it would not be liable simply because someone happened to slip upon an oiled spot unless it had some notice of its dangerous condition. . . . But the fair inference from the evidence is merely that at this particular point the oil had not been as fully absorbed by the floor as was general, and there is no evidence that this was apparent to ordinary observation, or that there was anything which would naturally give notice to the defendant of the alleged dangerous condition.' "

The paucity and meagerness of the testimony adduced by plaintiff was such as to justify the trial court in refusing to set aside the involuntary non-suit forced on plaintiff.

The ruling of the trial court from which this appeal was taken seems to be, and is, supported by the great weight of authorities, many of which we have cited hereinbefore.

It therefore follows that the judgment of the circuit court should be affirmed, and, it is so ordered. *Becker* and *McCullen, JJ.*, concur.